/

**John C. Bohren**
**yanni@bohrenlaw.com**
**145 South Spring Street**
**Suite 850**
**Los Angeles, CA**
**90012**
**Telephone (619)-433-2803**

**POULIN | WILLEY | ANASTOPOULO, LLC**
Paul J. Doolittle (*Pro Hac Vice Forthcoming*)
Paul.doolittle@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEC PHILLIPS, individually and on behalf of all others similarly situated,<br><br>Plaintiff.<br>v<br><br>AMERICAN HONDA MOTOR CO., INC.<br>Defendant. | **Case No:**<br>**1. Breach of Express Warranty**<br>**2. Breach of Implied Warranty**<br>**3. Unjust Enrichment**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Alec Phillips ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits this Class Action Complaint against Defendant American

Honda Motor Co., Inc. (“Honda” or “Defendant”). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff and his own acts and experiences, upon information and belief based on, among other things, the investigation of counsel, review of publicly available documents, the National Highway Traffic Safety Administration recall materials, Honda’s recall communications, and documents and information presently available to Plaintiff.

**NATURE OF THE ACTION**

1. This is a class action arising from Defendant American Honda Motor Co., Inc.’s sale of 2024–2026 Honda CBR600RR motorcycles that are subject to an admitted safety recall because of a dangerous engine defect[1]. Plaintiff Alec Phillips purchased a new Honda CBR600RR for ordinary personal use. He paid for a safe, roadworthy, merchantable motorcycle. Instead, he received a motorcycle subject to a safety defect that Honda admits can cause engine failure, rear-wheel lockup, crash, injury, or fire.
2. On December 18, 2025, Honda submitted a Part 573 Safety Recall Report to the National Highway Traffic Safety Administration concerning certain 2024–2026 Honda CBR600RR motorcycles. The recall is identified as NHTSA Recall No. 25V891 and Manufacturer Recall No. KT5[2].
3. The recall population includes approximately 1,253 Honda CBR600RR motorcycles manufactured between January 10, 2024, and November 12, 2025.
4. Honda reported that the recalled motorcycles contain a defect caused by improper finishing of the engine block’s cylinder surface. As a result, excessive engine oil

[1] Ex A. NHTSA Recall Notice
[2] Id.

consumption may occur. If the oil level drops below the minimum required level, oil pressure can decrease, potentially leading to connecting rod bearing seizure.

5. The safety consequences are severe. Honda reported to NHTSA that, if the connecting rod bearing seizes, the rear wheel may lock up and/or engine oil may contact the exhaust system, increasing the risk of crash, injury, or fire.

6. Honda's owner recall notice likewise warned owners that excessive engine oil consumption may occur; that the engine may seize if the oil level drops below the minimum required level; and that engine seizure may cause rear-wheel lockup, breach of the engine case, and/or engine oil contact with the exhaust system or rear tire, increasing the risk of crash, injury, or fire[3].

7. Despite the seriousness of this safety defect, Honda did not provide Plaintiff and Class Members with an immediately available final repair. Honda's NHTSA recall schedule identifies dealer notification as occurring on or about December 12, 2025, interim owner notification as scheduled for February 16, 2026, and planned remedy owner notification only as a "Phased Recall."

8. Honda's interim protocol is not a true repair. Rather than immediately replacing the defective engine components, providing a replacement motorcycle, issuing a full refund, or conducting a buyback, Honda left owners with motorcycles that could not be safely used and instructed them to await a later remedy while bearing the ongoing costs of ownership.

9. Plaintiff's experience illustrates the problem. Plaintiff purchased his Honda CBR600RR new in August 2025. At the time of purchase, the motorcycle had

[3] Ex B: Honda Recall Notice

approximately nine miles on the odometer. By the time the recall issue arose, the motorcycle had approximately 1,545 miles.

10. After receiving notice of the recall, Plaintiff did not continue ordinary use of the motorcycle. Instead, he drove it approximately 3.1 miles from storage to an authorized dealership, where it remained.

11. Plaintiff presented the motorcycle to a Kentucky dealership in or around February 2026. He was told that the motorcycle needed a new motor and was not safe to operate.

12. Honda did not provide Plaintiff with a prompt replacement motor, replacement motorcycle, full refund, or adequate buyback. Instead, Plaintiff was informed that Honda would not have a replacement motor available until the "second phase" of the recall, which would not occur before July.

13. Plaintiff requested a buyback or equivalent relief. Honda, through its dealerships, offered only approximately $7,000, even though the motorcycle's new MSRP was approximately $11,499 and Plaintiff estimated the motorcycle would have been worth approximately $10,500 absent the defect.

14. Meanwhile, Plaintiff continues to pay the note, interest, and insurance on a motorcycle he cannot safely use. Honda also conditioned release of the motorcycle on Plaintiff signing a waiver releasing Honda from liability and agreeing to bring the motorcycle in every 300 miles for inspection.

15. Honda's delayed, incomplete, and conditional recall response fails to provide Plaintiff and Class Members the benefit of their bargain. Plaintiff and Class Members paid for motorcycles that were safe, merchantable, roadworthy, and fit for ordinary use. They

instead received motorcycles subject to an admitted safety defect for which Honda has not provided a timely and adequate remedy.

16. Plaintiff brings this action individually and on behalf of all others similarly situated to recover damages and equitable relief arising from Honda's breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment.

## **PARTIES**

17. Plaintiff incorporates all previous paragraphs as if asserted fully herein.

18. Plaintiff Alec Phillips is a citizen and resident of Kentucky. He resides in Lexington which is part of Fayette County.

19. In or around August 2025, Plaintiff purchased a new Honda CBR600RR motorcycle from an authorized Honda dealer in Indiana for ordinary personal use. At the time of purchase, the motorcycle had approximately nine miles on the odometer. By the time the recall issue arose, the motorcycle had approximately 1,500 miles.

20. Plaintiff purchased the motorcycle with financing and continues to make payments on the note, including interest, and to maintain insurance coverage on the motorcycle despite being unable to safely use it.

21. Plaintiff's motorcycle is among the vehicles subject to NHTSA Recall No. 25V891 and Manufacturer Recall No. KT5, involving certain 2024–2026 Honda CBR600RR motorcycles.

22. Defendant American Honda Motor Co., Inc. ("Honda" or "Defendant") is the United States Honda entity identified by the National Highway Traffic Safety Administration as the manufacturer responsible for the subject recall.

23. Honda's Part 573 Safety Recall Report identifies the manufacturer as "Honda (American Honda Motor Co.)" and lists Honda's address as 1919 Torrance Blvd., Torrance, California 90501. Torrance is located in Los Angeles County.

24. Honda's Registered Agent is CSC Lawyers Incorporating Services located at 2710 Gateway Oaks Drive, Sacramento, California 95833.

25. Upon information and belief, Honda manufactures, imports, markets, distributes, sells, warrants, services, and administers recall remedies for Honda motorcycles sold throughout the United States, including the 2024–2026 Honda CBR600RR motorcycles at issue in this action.

26. Honda conducts substantial business throughout the United States, including in California, Kentucky, and Indiana, through its authorized dealer network, warranty program, recall program, customer-service operations, and sale and distribution of Honda motorcycles.

27. At all relevant times, Honda acted directly and through its authorized dealers, agents, representatives, employees, subsidiaries, affiliates, and others acting within the course and scope of their authority. Honda's authorized dealers sold Honda motorcycles, performed warranty and recall work, communicated with consumers about warranty and recall remedies, and acted as Honda's authorized representatives for purposes of inspection, repair, warranty service, and recall administration.

28. Honda received the benefit of the sale of Plaintiff's motorcycle and the sale of Class Members' motorcycles, directly or indirectly, through its manufacture, distribution, sale, warranty, and recall program for the affected Honda CBR600RR motorcycles.

## JURISDICTION AND VENUE

29. Plaintiff incorporates all previous paragraphs as if asserted fully herein.

30. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (a) the proposed Class contains more than 100 members; (b) at least one member of the proposed Class is a citizen of a state different from Defendant; and (c) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

31. Minimal diversity exists under 28 U.S.C. § 1332(d)(2). Plaintiff Alec Phillips is a citizen and resident of Kentucky. Defendant American Honda Motor Co., Inc. is identified in the NHTSA recall materials as "Honda (American Honda Motor Co.)" with an address at 1919 Torrance Blvd., Torrance, California 90501.

32. The proposed Class contains more than 100 members. Honda's Part 573 Safety Recall Report identifies approximately 1,253 potentially involved 2024–2026 Honda CBR600RR motorcycles.

33. The amount in controversy exceeds $5,000,000. The recalled motorcycles are premium Honda sport motorcycles. Plaintiff purchased his motorcycle for approximately $11,499 MSRP, and Honda's recall materials identify approximately 1,253 potentially involved motorcycles. When aggregated across the proposed Class, the claims for overpayment, diminished value, loss of use, finance charges, insurance expenses, incidental and consequential damages, restitution, and other relief exceed $5,000,000, exclusive of interest and costs.

34. This Court has personal jurisdiction over Defendant because Defendant resides in, maintains substantial operations in, conducts business from, and is headquartered or

otherwise maintains its relevant United States operations in this District. Honda's Part 573 Safety Recall Report identifies American Honda Motor Co. at 1919 Torrance Blvd., Torrance, California 90501.

35. This Court also has personal jurisdiction over Defendant because Defendant purposefully availed itself of the privilege of conducting business in California and in this District by, among other things, designing, importing, distributing, marketing, selling, warranting, servicing, and administering recall remedies for Honda motorcycles throughout the United States from its California operations.

36. Defendant's warranty, recall, customer-service, dealer-communication, and remedial decisions concerning the recalled Honda CBR600RR motorcycles were made, directed, approved, implemented, or administered, in whole or in substantial part, from Honda's California operations, including its Torrance, California location.

37. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District for venue purposes.

38. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Honda's recall administration, warranty administration, communications with NHTSA, dealer notifications, owner notifications, and decisions concerning the timing and adequacy of the recall remedy were made, directed, approved, implemented, or administered, in whole or in substantial part, from Honda's California operations.

## **<u>FACTUAL ALLEGATIONS</u>**

39. Plaintiff incorporates all previous paragraphs as if asserted fully herein.

**A. The Honda CBR600RR**

40. The Honda CBR600RR is a sport motorcycle manufactured, marketed, distributed, sold, warranted, and serviced by Honda.

41. Consumers who purchase Honda CBR600RR motorcycles reasonably expect that the motorcycles will be safe, roadworthy, merchantable, and suitable for ordinary motorcycle use.

42. Engine reliability, oil-pressure integrity, predictable power delivery, and rear-wheel control are essential safety features of any motorcycle.

43. A motorcycle whose engine may seize during operation, causing rear-wheel lockup and an increased risk of crash, injury, or fire, is not safe, roadworthy, merchantable, or fit for ordinary use.

44. Plaintiff and Class Members purchased or leased Honda CBR600RR motorcycles expecting that the motorcycles were free from safety-critical engine defects and suitable for ordinary use.

**B. The Safety Recall**

45. On or about December 18, 2025, Honda submitted a Part 573 Safety Recall Report to the National Highway Traffic Safety Administration concerning certain 2024–2026 Honda CBR600RR motorcycles.

46. The recall is identified as NHTSA Recall No. 25V891 and Manufacturer Recall No. KT5.

47. The recall applies to certain 2024–2026 Honda CBR600RR motorcycles manufactured between January 10, 2024, and November 12, 2025.

48. Honda identified approximately 1,253 motorcycles as potentially involved in the recall.

49. Honda reported that, due to improper finishing of the engine block's cylinder surface, excessive engine oil consumption may occur.

50. Honda further reported that, as the oil level drops below the minimum required level, oil pressure can decrease, potentially leading to connecting rod bearing seizure.

51. Honda reported that, if the connecting rod bearing seizes, the rear wheel may lock up and/or engine oil may contact the exhaust system, increasing the risk of crash, injury, or fire.

52. Honda's owner recall notice likewise advised owners that excessive engine oil consumption may occur and that, if the oil level drops below the minimum required level, engine seizure may occur.

53. Honda further warned owners that engine seizure may cause rear-wheel lockup, engine components to breach the engine case, and/or engine oil to contact the exhaust system or rear tire, increasing the risk of crash, injury, or fire.

54. The defect is safety-critical because it implicates the engine, oil-pressure system, and rear-wheel control of the motorcycle.

55. The defect substantially impairs the safety, reliability, merchantability, and value of the recalled motorcycles.

## C. Honda's Recall Remedy Is Inadequate and Fails of Its Essential Purpose

56. Although Honda identified the remedy type as "Repair," Honda did not provide Plaintiff and Class Members with an immediately available final repair.

57. Honda's NHTSA recall schedule identified dealer notification as beginning and ending on or about December 12, 2025.

58. Honda's NHTSA recall schedule identified interim owner notification as scheduled to begin and end on or about February 16, 2026.

59. Honda's NHTSA recall schedule did not identify a definite date for final remedy notification. Instead, it identified the planned remedy owner notification only as a "Phased Recall."

60. Honda's owner recall notice advised consumers that the repair for the motorcycle was still being finalized and was not currently available.

61. Instead of providing an immediately available final repair, Honda instructed owners to monitor oil levels and to bring their motorcycles to authorized Honda Powersports dealers every 300 miles for oil-consumption inspections until the repair became available.

62. Honda's interim inspection protocol is not a repair.

63. The interim inspection protocol does not correct the improper finishing of the engine block's cylinder surface.

64. The interim inspection protocol does not eliminate excessive oil consumption.

65. The interim inspection protocol does not eliminate the risk of oil-pressure loss.

66. The interim inspection protocol does not eliminate the risk of connecting rod bearing seizure.

67. The interim inspection protocol does not eliminate the risk of rear-wheel lockup, oil contact with the exhaust system or rear tire, crash, injury, or fire.

68. The interim inspection protocol does not restore the recalled motorcycles to safe, merchantable, roadworthy, and ordinary use.

69. Honda's delayed and incomplete recall remedy shifts the cost and burden of Honda's defect onto consumers.

70. Owners are left to choose between riding motorcycles subject to a safety-critical engine defect or parking motorcycles for an indefinite period while continuing to bear ownership expenses.

71. Honda has not provided Plaintiff and Class Members with a timely replacement engine, replacement motorcycle, full refund, buyback, or other adequate remedy.

72. Honda has not adequately compensated Plaintiff and Class Members for loss of use, diminished value, finance charges, insurance expenses, depreciation, storage burdens, inconvenience, or other economic harm.

73. Honda's limited repair remedy has failed of its essential purpose because it does not provide a prompt, safe, complete, or meaningful cure for the admitted safety defect.

74. Plaintiff and Class Members paid for safe, merchantable, roadworthy Honda motorcycles. Instead, they received motorcycles subject to a safety recall for a defect that can cause engine seizure, rear-wheel lockup, crash, injury, or fire, with no timely final repair.

**D. Plaintiff Alec Phillips's Purchase and Experience**

75. In or around August 2025, Plaintiff Alec Phillips purchased a new Honda CBR600RR motorcycle from an authorized Honda dealer in Indiana.

76. At the time of purchase, Plaintiff's motorcycle had approximately nine miles on the odometer.

77. Plaintiff purchased the motorcycle for ordinary personal use.

78. Plaintiff financed the motorcycle and remains obligated on the note.

79. By the time the recall issue arose, Plaintiff's motorcycle had approximately 1,500 miles.

80. In or around December 2025, Plaintiff received official notice of the recall.

81. After receiving notice of the recall, Plaintiff did not continue ordinary use of the motorcycle.

82. Instead, Plaintiff drove the motorcycle approximately 3.1 miles from storage to an authorized dealership.

83. In or around February 2026, Plaintiff presented the motorcycle to an authorized Honda dealership in Kentucky for evaluation and remedy.

84. Plaintiff was informed that the motorcycle required a new motor and was not safe to operate.

85. Plaintiff's motorcycle remained at the Kentucky dealership.

86. Honda did not provide Plaintiff with a timely replacement motor.

87. Honda did not provide Plaintiff with a replacement motorcycle.

88. Honda did not provide Plaintiff with a full refund.

89. Honda did not provide Plaintiff with a full buyback.

90. Plaintiff was informed that Honda would not have a replacement motor available until the second phase of the recall process, which would not occur before July 2026.

91. Plaintiff requested a buyback or equivalent relief.

92. Honda offered Plaintiff approximately $7,000.

93. The offer was substantially below the motorcycle's approximate new MSRP of $11,499.

94. The offer was also substantially below Plaintiff's estimated non-defective market value of approximately $10,500.

95. Plaintiff continues to make payments on the motorcycle note, including interest, despite being unable to safely use the motorcycle.

96. Plaintiff also continues to maintain insurance coverage on the motorcycle despite being unable to safely use it.

97. Honda further conditioned release of Plaintiff's motorcycle on Plaintiff signing a waiver releasing Honda from liability and agreeing to return the motorcycle for inspections every 300 miles.

98. Plaintiff did not receive the safe, merchantable, roadworthy motorcycle for which he paid.

99. Plaintiff has suffered damages including overpayment, diminished value, loss of use, finance charges, interest, insurance costs, inconvenience, and other incidental and consequential damages.

**E. Pre-Suit Notice**

100. On or about April 8, 2026, Plaintiff, through counsel, sent Honda written notice of its breach of warranty and insufficient recall remedy[4].

101. The notice was directed to American Honda Motor Co., Inc. at 1919 Torrance Blvd., Torrance, California 90501, and to Honda's California agent for service.

[4] Ex C. Notice Letter

102. The notice advised Honda that Plaintiff purchased a recalled Honda CBR600RR motorcycle and that Honda had failed to provide a timely and adequate warranty remedy.

103. The notice advised Honda that Plaintiff's motorcycle could not be safely operated, that Plaintiff remained responsible for loan payments and insurance, and that Honda had not provided a full refund, replacement vehicle, replacement engine, or adequate buyback.

104. The notice further advised Honda that its delayed recall remedy was insufficient and that Plaintiff sought relief for Honda's breach of warranty.

105. Honda failed to provide Plaintiff with a complete and adequate remedy after receiving notice.

## F. Economic Harm to Plaintiff and Class Members

106. Plaintiff and Class Members paid for motorcycles that they reasonably expected to be safe, merchantable, roadworthy, and fit for ordinary use.

107. Plaintiff and Class Members instead received motorcycles subject to a safety-critical engine defect that can cause excessive oil consumption, oil-pressure loss, connecting rod bearing seizure, rear-wheel lockup, oil contact with the exhaust system or rear tire, crash, injury, or fire.

108. The defect existed at the time the recalled motorcycles left Honda's possession and at the time of sale or lease to Plaintiff and Class Members.

109. The defect diminished the value of the recalled motorcycles at the time of purchase or lease.

110. The recall further diminished the value of the recalled motorcycles after sale.

111. Plaintiff and Class Members overpaid for the recalled motorcycles because the motorcycles were worth less than represented and less than the purchase or lease price paid.

112. Plaintiff and Class Members did not receive the benefit of their bargain.

113. Plaintiff and Class Members have also suffered loss-of-use damages because the recalled motorcycles cannot be safely operated unless and until Honda provides a complete and adequate repair.

114. Plaintiff and Class Members have incurred and continue to incur damages including, but not limited to, overpayment, diminished value, loss of use, finance charges, interest, insurance expenses, depreciation, storage costs, transportation costs, inconvenience, and other incidental and consequential damages.

115. Honda has retained the economic benefits of selling the recalled motorcycles while shifting the costs and burdens of the defect and delayed remedy onto Plaintiff and Class Members.

116. As a result of Honda's conduct, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

## CLASS ACTION ALLEGATIONS

117. Plaintiff incorporates all previous paragraphs as if asserted fully herein.

118. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3).

119. Plaintiff seeks to represent the following Nationwide Class:

**Nationwide Class:** All persons in the United States who purchased or leased a 2024, 2025, or 2026 Honda CBR600RR motorcycle subject to NHTSA Recall No. 25V891.

120. In the alternative, or in addition to the Nationwide Class, Plaintiff seeks to represent the following Kentucky Subclass:

**Kentucky Subclass:** All persons in Kentucky who purchased or leased a 2024, 2025, or 2026 Honda CBR600RR motorcycle subject to NHTSA Recall No. 25V891.

121. The Nationwide Class and Kentucky Subclass are collectively referred to herein as the "Classes."

122. Excluded from the Classes are Defendant; Defendant's parents, subsidiaries, affiliates, officers, directors, employees, agents, and representatives; any entity in which Defendant has a controlling interest; authorized Honda dealers to the extent they purchased or leased the recalled motorcycles for resale; all persons who make a timely election to be excluded from the Classes; and the judge assigned to this case, the judge's immediate family, and court staff.

123. Plaintiff reserves the right to amend or modify the Class definitions based on discovery, further investigation, or order of the Court.

124. The members of the Classes are ascertainable because they may be identified through Honda's records, authorized dealer records, warranty records, recall records, vehicle identification number data, registration records, financing records, and other objective documentation.

125. The recalled motorcycles are readily identifiable by model year, model, VIN, recall status, and inclusion in NHTSA Recall No. 25V891. Honda's Part 573 Safety Recall Report identifies the affected vehicles as certain 2024–2026 Honda CBR600RR motorcycles and identifies approximately 1,253 potentially involved motorcycles.

126. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual Class Members are presently unknown to Plaintiff, that information is within Honda's possession, custody, or control and may be obtained through discovery, including Honda's recall records, warranty records, VIN data, dealer records, customer communications, registration information, and repair records. Honda's Part 573 Safety Recall Report identifies approximately 1,253 potentially involved 2024–2026 Honda CBR600RR motorcycles. Class Members may be notified of the pendency of this action through recognized, Court-approved notice methods, including direct mail, email, internet publication, social media, dealer records, registration data, and/or other appropriate forms of notice.

127. **Commonality: Fed. R. Civ. P. 23(a)(2)** – Questions of law and fact common to Plaintiff and the Classes exist and predominate over any questions affecting only individual Class Members. These common questions arise from Honda's uniform conduct, uniform recall, uniform warranty obligations, uniform failure to provide a timely and adequate remedy, and the common engine defect affecting the recalled motorcycles.

128. Common questions include, but are not limited to:

a. Whether the recalled 2024–2026 Honda CBR600RR motorcycles contain the engine defect identified in NHTSA Recall No. 25V891;

b. Whether improper finishing of the engine block's cylinder surface can cause excessive engine oil consumption;

c. Whether excessive engine oil consumption can cause oil-pressure loss and connecting rod bearing seizure;

d. Whether connecting rod bearing seizure can cause rear-wheel lockup, oil contact with the exhaust system or rear tire, crash, injury, or fire;

e. Whether the defect existed at the time the recalled motorcycles left Honda's possession and control;

f. Whether Honda expressly warranted the recalled motorcycles;

g. Whether Honda breached its express warranties by selling motorcycles with a safety-critical engine defect;

h. Whether Honda breached its express warranties by failing to provide a timely and adequate repair, replacement, refund, buyback, or other remedy;

i. Whether Honda's limited repair remedy failed of its essential purpose;

j. Whether the recalled motorcycles were merchantable at the time of sale;

k. Whether a motorcycle subject to engine seizure and rear-wheel lockup is fit for ordinary motorcycle use;

l. Whether Honda's recall remedy is inadequate because it does not provide a p rompt, complete, and meaningful cure for the defect;

m. Whether Honda was unjustly enriched by retaining revenues and profits from the sale or lease of defective motorcycles;

n. Whether Plaintiff and Class Members suffered economic damages, including overpayment, diminished value, loss of use, finance charges, insurance costs, depreciation, and other incidental or consequential damages;

o. The proper measure of damages, restitution, disgorgement, and equitable relief; and

p. Whether Plaintiff and Class Members are entitled to declaratory, injunctive, monetary, restitutionary, or other relief.

129. **Typicality: Fed. R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the Classes because Plaintiff and Class Members purchased or leased recalled Honda CBR600RR motorcycles subject to the same safety defect, the same recall, the same warranty obligations, and the same inadequate recall remedy. Plaintiff, like Class Members, paid for a safe, roadworthy, merchantable motorcycle but received a motorcycle subject to an engine defect that can cause oil-pressure loss, connecting rod bearing seizure, rear-wheel lockup, crash, injury, or fire. Plaintiff advances the same legal theories on behalf of himself and the Classes, including breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment.

130. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are aligned with, and not antagonistic to, the interests of Class Members. Plaintiff seeks relief for the same injuries suffered by Class Members, including overpayment, diminished value, loss of use, and other economic harm caused by Honda's sale of defective motorcycles and failure to provide a timely and adequate remedy. Plaintiff has retained counsel experienced in complex litigation, consumer class actions, warranty litigation, and defective-product litigation.

131. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – Common questions of law and fact predominate over questions affecting only individual Class Members. The central issues in this case concern Honda's uniform conduct, including the existence of the common defect, Honda's warranties, Honda's recall, Honda's delayed and inadequate

remedy, the motorcycles' merchantability, Honda's retention of benefits from the sale of defective motorcycles, and the appropriate classwide measure of damages and restitution.

132. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class Members are significant but may be insufficient to justify the expense and burden of individual litigation against Honda. Individual actions would risk inconsistent adjudications, waste judicial resources, and create unnecessary delay and expense. By contrast, class treatment will allow common issues to be resolved in a single proceeding, promote consistency, conserve judicial resources, and provide an efficient mechanism for redressing the harms alleged herein.

133. Plaintiff seeks monetary damages, restitution, disgorgement, and equitable relief on behalf of the Classes. Unless a Class is certified, Honda may retain the benefits of its alleged misconduct while Class Members remain without an adequate remedy for the diminished value, loss of use, and other economic harm caused by the defective motorcycles and Honda's delayed recall response.

134. This action is also appropriate for certification under Fed. R. Civ. P. 23(b)(2) because Honda has acted or refused to act on grounds generally applicable to the Classes. Honda's uniform recall response, warranty administration, and refusal to provide a prompt and adequate remedy apply generally to owners and lessees of the recalled motorcycles, making final injunctive and declaratory relief appropriate with respect to the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY

135. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

136. Plaintiff brings this claim individually and on behalf of the Classes against Defendant American Honda Motor Co., Inc.

137. Honda expressly warranted the recalled 2024–2026 Honda CBR600RR motorcycles, including Plaintiff's motorcycle, through written warranties, warranty booklets, owner materials, authorized dealer communications, recall communications, and other representations made in connection with the sale, lease, service, and repair of the motorcycles.

138. Honda's express warranties included promises that the recalled motorcycles would be free from defects in materials and workmanship and that Honda would repair covered defects within the warranty period.

139. Honda also expressly undertook to repair the safety defect identified in NHTSA Recall No. 25V891 and Manufacturer Recall No. KT5.

140. Plaintiff and Class Members purchased or leased the recalled motorcycles with the reasonable expectation that the motorcycles were safe, roadworthy, merchantable, free from safety-critical engine defects, and suitable for ordinary motorcycle use.

141. The recalled motorcycles did not conform to Honda's express warranties because they contained a safety-critical engine defect that can cause excessive oil

consumption, reduced oil pressure, connecting rod bearing seizure, rear-wheel lockup, oil contact with the exhaust system or rear tire, crash, injury, or fire.

142. The defect existed at the time the recalled motorcycles left Honda's possession and control and at the time they were sold or leased to Plaintiff and Class Members.

143. Honda breached its express warranties by manufacturing, distributing, selling, leasing, and warranting motorcycles that were defective, unsafe, diminished in value, and not fit for ordinary use.

144. Honda further breached its express warranties by failing to provide Plaintiff and Class Members with a timely, complete, and adequate repair.

145. Honda's recall remedy was not immediately available and did not provide Plaintiff and Class Members with a prompt final cure for the defect.

146. Honda's interim inspection protocol does not repair the defective engine condition, does not eliminate excessive oil consumption, does not eliminate the risk of oil-pressure loss, does not eliminate the risk of connecting rod bearing seizure, and does not restore the motorcycles to safe and ordinary use.

147. Plaintiff presented his motorcycle to an authorized Honda dealership for evaluation and remedy.

148. Plaintiff was informed that his motorcycle required a new motor and was not safe to operate.

149. Honda did not provide Plaintiff with a timely replacement motor, replacement motorcycle, full refund, buyback, or other adequate remedy.

150. Instead, Plaintiff was informed that a replacement motor would not be available until the second phase of the recall process, which would not occur before July 2026.

151. Honda's failure to provide a prompt and adequate warranty repair deprived Plaintiff and Class Members of the substantial benefit of their bargain.

152. Honda's limited repair remedy has failed of its essential purpose because it has not provided Plaintiff and Class Members with a safe, usable, repaired motorcycle within a reasonable time.

153. Plaintiff and Class Members provided Honda with reasonable notice of the breach. Among other things, Honda had actual notice of the defect through its own investigation, NHTSA recall submission, dealer communications, warranty program, recall program, and consumer complaints.

154. Plaintiff also provided written pre-suit notice to Honda through counsel, advising Honda of its breach of warranty and insufficient recall remedy.

155. Any further attempt to obtain warranty performance from Honda would be futile because Honda has acknowledged the defect, has not provided an immediately available final repair, and has failed to provide Plaintiff with a timely replacement engine, replacement motorcycle, full refund, buyback, or other adequate remedy.

156. As a direct and proximate result of Honda's breach of express warranty, Plaintiff and Class Members suffered damages, including overpayment, diminished value, loss of use, finance charges, interest, insurance expenses, depreciation, inconvenience, and other incidental and consequential damages.

157. Plaintiff and Class Members are entitled to recover all damages and other relief available by law, including actual damages, benefit-of-the-bargain damages, incidental and consequential damages, restitution, disgorgement where appropriate, attorneys'

fees and costs where available, pre-judgment and post-judgment interest, and all other relief the Court deems just and proper.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**

158. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

159. Plaintiff brings this claim individually and on behalf of the Classes against Defendant American Honda Motor Co., Inc.

160. At all relevant times, Honda was a merchant with respect to the manufacture, distribution, sale, lease, warranty, service, and repair of motorcycles, including the recalled 2024–2026 Honda CBR600RR motorcycles.

161. Honda, directly and through its authorized dealer network, placed the recalled motorcycles into the stream of commerce and intended that Plaintiff and Class Members purchase or lease them for ordinary use.

162. Honda impliedly warranted that the recalled motorcycles were merchantable, fit for their ordinary purpose, safe for ordinary motorcycle operation, roadworthy, and of the same quality as similar motorcycles generally acceptable in the trade.

163. Plaintiff and Class Members purchased or leased the recalled motorcycles for ordinary personal, transportation, recreational, and/or motorcycle use.

164. The recalled motorcycles were not merchantable when sold or leased because they contained a latent, safety-critical engine defect.

165. Specifically, due to improper finishing of the engine block’s cylinder surface, the recalled motorcycles may experience excessive engine oil consumption.

166. As the oil level drops below the minimum required level, oil pressure can decrease, potentially leading to connecting rod bearing seizure.

167. If the connecting rod bearing seizes, the rear wheel may lock up and/or engine oil may contact the exhaust system or rear tire, increasing the risk of crash, injury, or fire.

168. A motorcycle whose engine may suffer oil-pressure loss, connecting rod bearing seizure, rear-wheel lockup, and increased risk of crash, injury, or fire is not fit for ordinary motorcycle use.

169. The defect substantially impairs the safety, reliability, usability, merchantability, and value of the recalled motorcycles.

170. Plaintiff's motorcycle was not fit for ordinary use. After Plaintiff presented the motorcycle to an authorized Honda dealership, he was informed that the motorcycle required a new motor and was not safe to operate.

171. Honda failed to provide Plaintiff with a timely replacement motor, replacement motorcycle, full refund, buyback, or other adequate remedy.

172. Honda's delayed and incomplete recall response did not restore Plaintiff's motorcycle, or the recalled motorcycles generally, to merchantable condition within a reasonable time.

173. Plaintiff and Class Members did not receive motorcycles that were fit for the ordinary purposes for which motorcycles are used.

174. Plaintiff and Class Members could not have discovered the defect through reasonable inspection before purchase or lease because the defect was latent, internal to the engine, and within Honda's superior knowledge and control.

175. Honda had notice of the defect and breach of implied warranty through, among other things, its own investigation, manufacturing records, NHTSA recall submission, dealer communications, warranty and recall programs, and consumer complaints.

176. Plaintiff also provided Honda written pre-suit notice of its breach of warranty and insufficient recall remedy.

177. As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and Class Members suffered damages, including overpayment, diminished value, loss of use, finance charges, interest, insurance expenses, depreciation, inconvenience, and other incidental and consequential damages.

**COUNT III**
**UNJUST ENRICHMENT**

178. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

179. Plaintiff brings this claim individually and on behalf of the Classes against Defendant American Honda Motor Co., Inc.

180. Plaintiff pleads this claim in the alternative to his warranty claims to the extent Honda contends that no express contract or warranty provides Plaintiff and Class Members with complete relief.

181. Plaintiff and Class Members conferred a benefit upon Honda by purchasing or leasing recalled 2024–2026 Honda CBR600RR motorcycles.

182. Honda accepted and retained the benefits conferred by Plaintiff and Class Members, including revenues, profits, warranty-related benefits, goodwill, market

share, and other economic benefits derived from the sale or lease of the recalled motorcycles.

183. Honda knew of and appreciated these benefits because Honda manufactured, distributed, marketed, warranted, serviced, and administered recall remedies for the recalled motorcycles through its authorized dealer network and national warranty and recall programs.

184. Honda's retention of these benefits is unjust and inequitable because Plaintiff and Class Members paid for safe, roadworthy, merchantable motorcycles fit for ordinary use but received motorcycles subject to a safety-critical engine defect.

185. The recalled motorcycles contain a defect that may cause excessive engine oil consumption, oil-pressure loss, connecting rod bearing seizure, rear-wheel lockup, oil contact with the exhaust system or rear tire, crash, injury, or fire.

186. Honda's recall remedy has not provided Plaintiff and Class Members with a timely, complete, and adequate cure for the defect.

187. Instead, Honda has retained the economic benefits of the sales while shifting the costs and burdens of the defect onto Plaintiff and Class Members, including loss of use, diminished value, finance charges, interest, insurance expenses, depreciation, inconvenience, and other economic harm.

188. Honda has not provided Plaintiff and Class Members with a full refund, replacement motorcycle, timely replacement engine, adequate buyback, or other complete remedy.

189. Plaintiff's experience illustrates the inequity. Plaintiff continues to make payments, pay interest, and maintain insurance coverage on a motorcycle that he cannot safely use and that Honda has not timely repaired.

190. It would be inequitable and unjust for Honda to retain the full economic benefit of selling the recalled motorcycles while Plaintiff and Class Members remain burdened with defective, unsafe, diminished-value motorcycles and ongoing ownership costs.

191. Plaintiff and Class Members did not receive the benefit of their bargain.

192. As a direct and proximate result of Honda's unjust enrichment, Plaintiff and Class Members have suffered damages and economic losses in an amount to be determined at trial.

193. Plaintiff and Class Members are entitled to restitution, disgorgement, and/or other equitable relief requiring Honda to return the benefits unjustly retained as a result of its sale or lease of defective motorcycles and failure to provide a timely and adequate remedy.

194. Plaintiff and Class Members further seek all other relief the Court deems just and proper, including pre-judgment and post-judgment interest, attorneys' fees and costs where available, and any other equitable relief necessary to prevent Honda's unjust retention of benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against the Defendant as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class

and Plaintiffs' attorneys as Class Counsel;

B. For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 26,, 2026,

Respectfully submitted,

_/s/John C. Bohren_
John C. Bohren
YANNI LAW
145 South Spring Street
Suite 850
Los Angeles, CA 90012
Telephone: (619) 433-2803
yanni@bohrenlaw.com

Paul J. Doolittle, Esq. (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
T: (803) 222 – 2222
E: paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiffs and the Putative Class*